Moncure P.
delivered the opinion of the court.
This is an appeal from a decree of the circuit court of Fairfax county, declaring a certain paper writing therein mentioned, admitted to probate as the last will and testament of Edmund Conly deceased, to be his true last will and testament.
In the county court of Fairfax county, September •court 1868, the said paper writing was presented to *314 the court; and the same being proved to be wholly in the handwriting of the said Conly, and the signature-thereto his genuine signature, by the oath of Samuel Farnsworth sworn in open court, was admitted to probate and ordered to be recorded.
The said paper writing was in these words:
“Lewinsville, August 19, 1862.
Dear wife:
I am going away; I may never return. T leave my property to Gaines and Dan; dispose of it as you think fit; don’t forget sister Mary and Bridget. Pay William McCauley twenty dollars; Patrick. Sullivan, twenty-five dollars.
Edmund C. Conly.”
Witness: Samuel Farnsworth.
In September 1869, Mary Cody, a sister of the alleged testator, brought her suit in the circuit court of said county, to invalidate the said probate. In her bill she alleged, in substance, and among other things,. 1st, that said Edmund C. Conly, late of the county aforesaid, died in said county in the year 1868, leaving- , a considerable real estate and personal estate in said county; leaving also a widow, Margaret Conly, with no children; and as his heirs at law, the complainant, his sister; James Conly and Rose Conly, children of' John Conly, a deceased brother; James'Conly, a brother; and Joanna Powers, a sister, who had married Pierce Powers; and that the estate of 3aid Edmund C. Conly had been committed to the hands of Walker-R. Millan, late sheriff of said county, for administration. 2dly, That the said Edmund C. Conly, in the year 1862, a resident of said county, and possessed of' some lands and personal estate, in view of the civil war then raging, contemplated leaving his residence *315 and going abroad, and wrote a letter, as is alleged, to bis wife, the said Margaret Conly, which letter is the paper writing aforesaid. Bdly, That the said Edmund Conly never left his home, but continued to reside in Fairfax county until .his death in 1868; that during his life he purchased a farm in said county, near Lewinsville, and placed the complainant, Mary, his sister, in possession of the same, for the use and benefit.of herself and family', free of rent, and of which property she was still in possession. 4thly, That after the death of said Edmund C. Conly, the letter aforesaid was admitted to probate in the county court of said county, as the last will and testament of said Edmund C. Conly, on the oath of said Samuel Farnsworth, who testified that said paper was wholly in the handwriting of said Edmund C. Conly, and his signature thereto was his genuine signature. Full proof was required of the genuineness of the letter; and even if genuine, complainant denied that it was the last will and testament of said Edmund C. Conly, or that he ever intended it to operate as such. Moreover, even if said paper might be regarded as testamentary, complainant contended that it would be void for vagueness and uncertainty; and that the probate was also void, the said paper having been proved only by one witness. She therefore prayed that the said widow, and other parties concerned, who were enumerated by name, might be made defendants to the bill; that an issue might be ordered, to ascertain whether the said paper, &c., was the will of said Edmund C. Conly; that the said will and probate thereof might be can-celled and declared void; that the estate of said Edmund C. Conly might be distributed among the parties entitled thereto according to law; and that general relief might be decreed in the premises.
*316 The bill was taken for confessed as to all the defendants except the infants James Donovan and Daniel • Donovan who answered by a guardian ad litem assigned by the court; and except also the widow Margaret Conly, who filed her answer, in which, among other things she stated the following facts in substance: That her said husband died in February 1868, leaving a small personal estate, worth some five or six hundred dollars, and two small tracts of land containing sixty-three and one hundred acres, which latter he purchased four or five years before his death and rented to the complainant for one third of the crop, and she has never had any other possession of it than as tenant; that he died without children; and that his heirs at law might be correctly named in the bill. She averred, however, that the paper referred to in the bill as having been admitted to probate, did contain the disposition of his property as he had frequently expressed to her. The two boys named therein, James and Dan, were the children of her brother John Donovan, whose wife at her death left two small children, the boys above' named, and at the instance and request of respondent’s said husband, these two children were taken by her to their house, where they have remained ever since, a period of upwards of sixteen years. The said boys were- then (in October 1869) nineteen and seventeen years of age. She further averred that she had frequently heard her husband say, both before and after the date of his will, that the two boys should have whatever he had to leave; that having been raised by him, they felt like his children and should stand in the place of children to him; that in reference to the paper admitted to probate as aforesaid, he informed her, in a conversation held with her a short time previous to his death, *317 that his will was among his papers, that he had written it when he expected to be taken prisoner by the soldiers, who, about that time, were infesting the neigh- - borhood, but that it was all that was necessary, &e. &e.
In November 1869, the cause coming on to be heard in the said circuit court a decree was made that there should be a new trial by a jury on the common law side of the court, to ascertain whether any, and if any how much, of the said paper writing in the bill and pro-, ceedings mentioned, offered in the county court of Fairfax and there admitted to probate, as the will of Edmund C. Conly dec’d, was the will of the decedent; and that on the trial of the issue, the bill, answer, and exhibit might be read.
In November 1871, the issue was accordingly tried by a jury, which found a special verdict in these words: “We the jury, sworn to speak the truth, upon our oaths say that the paper writing headed 1862, Lewinsville, August 19, and which was admitted to probate in Fairfax county court September, 1868, as the last will and testament of Edmund C. Conly is in the hand-writing of Edmund C. Conly; and we find that at that time, that portion of the county of Fairfax in which Edmund C. Conly resided, was alternately in the possession of the federal and confederate forces, and that said Edmund C. Conly expressed fears of being taken away by the federal forces; that Edmund C. Conly resided at Lewinsville during the war, and never abandoned his home, but continued to reside there up to the time of his death, and that the citizens of that portion of the country were generally apprehended and' carried away as prisoners, with the exception of the said Conly and James Magarity. But whether or not, upon the whole matter aforesaid, the-said paper writing herein set forth be the said last will *318 and testament of the said Edmund C. Conly, the jury do not know. Therefore they pray the advice of the court. And if upon the whole matter, it shall seem to the court that the said paper writing is the last will and testament, in whole or in part, of the said Edmund C. Conly, then the jury find that the said paper writing is the last will and testament of the said Edmund C. Conly; but if, upon the whole matter aforesaid, it shall seem to the court that the said paper writing is not, in whole or in part, the last will and testament of the said Edmund C. Conly, then we find that it is not the last will and testament'of the said Edmund C. Conly.”
The case being heard and considered by the court upon the special verdict, and it seeming to the court that, upon the facts therein, the paper writing therein referred to is the last will and testament of Edmund C. Conly it was afterwards, to wit: on the 6th day of December 1871, decreed by the said court accordingly. Three bills of exceptions were taken by the parties respectively, to rulings of the court on the trial of the issue, which, or such of them as are material, will be noticed hereafter.
From the decree aforesaid, declaring the said paper writing to be the last will and.testament of the said Edmund C. Conly, the complainant Mary Cody applied to this court for an appeal; which was accordingly allowed.
The appellant, in her petition for an appeal, assigns three errors in the several rulings of the court below in the ease. We will consider these assignments of error in the order in which they are made. The first and principal one is:
1. “ The said paper is not to be regarded as the last will and testament of the said Edmund C. Conly, the *319 •same being a devise (if so to be construed at all) contingent upon the happening of an event which never ■occurred, whereby the whole disposition intended by •said writing becomes inoperative and ineffectual.”
That the said paper is in the form of a letter from the supposed testator to his wife, and not in the usual form of a will, does not prevent it from being a will, if so intended by the author. A will, intended and duly executed as such, may be in any form which the testator may choose to adopt. Indeed, this is not denied by the counsel for the appellant; who contends, however, that the intention of the author, as declared on the face of the paper, was that it should be his will only on a certain contingency, which never happened; and therefore that it is not his will, and ought not to have been admitted to probate as such.
If it were true that the paper was not intended to be a will, except upon a contingency which never happened, the conclusion drawn therefrom by the counsel would be inevitable.
But is it true?
The supposed contingency is contained only in these words, at the beginning of the will: “I am going away; I may never return.” Do these words make the will conditional, to take effect only in the event that the testator should, in fact, go away and never return? Or do they merely indicate the motive which induced the testator to make his will at the time he did, which will he intended to operate as such unless afterwards duly cancelled or revoked, without reference to the contingency of his going away and never returning ?
We must construe these words by the light of the surrounding circumstances, as found in the special verdict; which are: “that at that time (to-wit, the date of *320 the will) that portion of the county of Fairfax in which Edmund O. Conly resided was alternately in the pos- - session of the federal and confederate forces; and that, said Edmund C. Conly expressed fears of being taken away by the federal forces; that Edmund C. Conly resided at Lewinsville during the war, and never abandoned his home, but continued to reside there up to. the time of his death, and that the citizens of that portion of the county were generally apprehended and carried away as prisoners, with the exception of the-said Conly and James Magarity.” And also the facts-stated in the bill and answer, that the testator never had any children, that his heirs at law were numerous collateral relations, and that the chief objects of his bounty, besides his wife, were two nephews of his. wife described in the will as “Gaines and Dan,” whom he had adopted as his children, and who had long lived with him. His estate was comparatively of little value, consisting of two small tracts of land, and of some personal property. He certainly could not have intended to die intestate, and he never made any other-will than the one in question. The presumption, therefore, is, that he intended the one in question to-be his absolute and unconditional will. There is not a word in the will which is inconsistent with this construction. Hot a word in it, which is not perfectly consistent with the idea, that the words, “I am going away; I may never return,” were used only to indicate his reason for then making his will, and not to express or imply a condition on which it should have effect.
The cases on this subject show, that while a person may, certainly, make a conditional will, his intention to do so must appear very clearly on the face of the will; and if such an intention do not so appear, the *321 will must be regarded as unconditional. Indeed, in some of tbe cases, the form of expression used in the will was conditional, and yet the construction of the will was otherwise.
The cases referred to by the counsel for the appellant were cases, in which the court deciding them, considered that the intention to make conditional wills plainly appeared. Without noticing all of them, such was the case in Parsons v. Lanoe, 1 Ves. Sen. 189, decided by Lord Hardwicke in 1748, which is a leading case on this subject, and which is mainly relied on by the counsel for the appellant as being almost identical with this case, in regard to the words of the paper in controversy. The important difference between the two cases is, that there, the form of expression is contingent and conditional: “if I die before my return from Ireland” &c. Whereas Aere, the form is otherwise: “I am going away; I may never return.” There the surrounding circumstances corroborated the apparent import of the words, that the will was intended to be conditional. Here they show the contrary.
The doctrine on this subject is laid down in Eedfield on the Law of Wills, part 1, §§ 178 and seq., where the cases, or most of them, are referred to in the notes. Among those cases is that of Tarver v. Tarver, 9 Pet. R. 174, in regard to which the author says: “Where the testator stated, that, 1 being about to take a long journey, and knowing the uncertainty of life, he deemed it advisable to make a will,’ it was held, that this was not a conditional will. The instrument taking effect as a will, is not made to depend upon the event of the return, or not, of the testator from his journey; there is, therefore, no reason for annulling the will on the ground that it was conditional.”
The learned author, after referring to some of the *322 cases, proceeds to state the law thus: “'As questions of a very embarrassing nature often arise in regard to the proper testamentary character of papers left in the form of a will, but expressed in terms more.or less contingent, it must be borne in mind, that in that class of instruments the question must turn upon the point whether the contingency is referred to as the occasion of making the will, or as the condition on which the instrument is to become operative. Ordinarily where the instrument is executed with all the requisite formalities, it will be presumed to have been’ done animo testandi, notwithstanding that it may be expressed to have been made to avoid the contingency of dying intestate, in' case the testator should not return from a contemplated journey. In such a case, in order to render the instrument contingent in its operation, it should clearly appear by its language that it was not intended to remain as an operative will, except in the event of the failure to return.”
In Skipwith &c. v. Cabell’s ex’or &c., 19 Gratt. 758, 782, this subject was considered by this court in an opinion delivered by Judge Joynes, and the law on the subject was laid down to the same effect as before stated. In that case, the words of the devise were conditional in form: “In case of a sudden and unexpected death,” &c.; and yet it was held to be unconditional in effect. Two important recent English cases are there referred to, which are very strong to the same effect. They are, Porter’s case, Law Rep. 2 P. & D. 22; and Dobson’s case, Law Rep. 1 P. & D. 88. But it is unnecessary to state these cases, as they are stated in the opinion of Judge Joynes. We will state, however, that, in Dobson’s case, the language of the will was this: “In case of any fatal accident happening to me, being about to travel by railway, I hereby leave *323 all my property,” &c. It was held that the will was not conditional, and it was admitted to probate, although the testator returned unhurt from the travel by railway alluded to in the will.
We are therefore of opinion, that the said paper, admitted to probate as aforesaid, is not inoperative and ineffectual upon the ground that it was contingent upon the happening of an event which never occurred, as insisted in the first assignment of error; and that there is no error in the decree in that respect.
2. The second assignment of error is, that' “ the testimony of one who had never seen the alleged author of the paper write, and whose impressions were drawn from recollections of orders seen by him casually in the way of business thirteen years before, should not have been allowed.”
This assignment.of error is based upon a bill of exceptions taken by the appellant to the ruling of the court, in admitting before the jury, on the trial of the issue, the .evidence of H. W. Thomas, who. testified “that Edmund Conly dug a well about 1858 for witness; he gave several orders on me'for money, and from my recollection of his hand-writing, I think the paper shown is his. I never saw him write. I paid the orders, and they were recognized by Conly in our settlement.”
We think this evidence was clearly admissible (its weight being a subject for the consideration of the jury), as is shown'by the authorities referred to by the counsel for the appellees. We therefore think the court did not err in admitting it.
3. The third and last assignment of error is, that “the after discovered evidence was such as might have entirely changed the verdict of the jury, and should have been allowed.”
*324 We are, clearly, of opinion, that the court did not err in overruling the motion of the appellant to set aside the verdict on the ground of after discovered evidence; which, to say the most of it, was merely cumulative and corroborative, and was certainly not such as ought to produce on another trial an opposite result on the merits. See the cases on this subject referred to by the counsel for the appellees; Head’s case, 22 Gratt. 924, 946; and Adams v. Hubbard, 25 Id. 129, 185.
Upon the whole we are of opinion that there is no error in the decree appealed from, and that it ought to be affirmed.
Decree aeeirmed.